UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LANA MARIE STAINROD,

    Plaintiff,

v.                                                         Case No. 3:20cv5456-MCR-HTC

SCARLET PEARL CASINO RESORT,

    Defendant.
_____/

## ORDER and REPORT AND RECOMMENDATION

This matter is before the Court on Land Holdings I, LLC d/b/a Scarlet Pearl Casino Resort's ("Scarlet Pearl") Motion to Dismiss Plaintiff's Amended Complaint or in the Alternative Motion to Transfer Venue. ECF Doc. 14. The basis of the motion to dismiss is lack of jurisdiction. Upon consideration of the motion to dismiss, as well as Plaintiff's response (ECF Doc. 19), and for the reasons set forth below, the undersigned recommends Scarlet Pearl's motion to dismiss be GRANTED.

Also, before the Court is Plaintiff's "Motion Requesting The Investigation For Perjury" (ECF Doc. 17). This motion is DENIED.

## I.   BACKGROUND

Plaintiff Lana Marie Stainrod initiated this action on May 13, 2020. ECF Doc. 1. Stainrod alleges, on May 17, 2018, she and several others rode on a Good Times

Tour Transportation ("Good Times") bus from Pensacola, Florida to Scarlet Pearl Casino Resort in D'Iberville, Mississippi. ECF Doc. 18 at 2–3. While on Scarlet Pearl's premises, Stainrod slipped and fell because "there was liquid on the carpet around [a] garbage can" but no caution tape or caution signs. *Id.* at 4. Stainrod seeks compensatory damages of $900,000 and punitive damages of $3,500,000. *Id.* at 7.

When Stainrod initiated this complaint in May, she identified in the case style two defendants, Bob Granieri and Scarlet Pearl. ECF Doc. 1. Despite naming Granieri as a defendant, the complaint was devoid of any factual allegations as to him or even a mention of his name in the body. Although Stainrod filed the complaint *pro se*, she did not seek *in forma pauperis* status. Thus, the Court advised Stainrod she was responsible for serving the Defendants pursuant to Federal Rule of Civil Procedure 4. ECF Doc. 4. Stainrod presented only one summons to the clerk and served only one defendant—Scarlet Pearl.

On July 16, 2020, Scarlet Pearl filed a motion to dismiss or to transfer venue, asserting Stainrod had failed to establish this Court's jurisdiction. ECF Doc. 7. Namely, Scarlet Pearl argued the Court lacked both subject matter and personal jurisdiction. *Id.* As to subject matter jurisdiction, Scarlet Pearl argued Stainrod failed to allege the citizenship of Granieri or the "et al" unnamed defendants. As to personal jurisdiction, Scarlet Pearl argued it does not do any business in Florida and supported this position with a declaration. *Id.* Stainrod responded to the motion to

Case No. 3:20cv5456-MCR-HTC

dismiss by arguing Scarlet Pearl does business in Florida via Good Times Tour Transportation, "a subsidiary contractor" that buses Pensacola residents to the casino. Stainrod did not address the subject matter jurisdiction issue. ECF Doc. 10.

Because Stainrod is proceeding *pro se*, the Court deferred ruling on the initial motion to dismiss and allowed Stainrod an opportunity to file an amended complaint alleging the citizenships of all defendants (or to make clear she intended to sue only Scarlet Pearl) and Scarlet Pearl's contacts with Florida. ECF Doc. 12.

The Court further advised Stainrod in its order deferring ruling that it is her burden to establish jurisdiction and that, although the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other evidence, once the defendant meets that burden, it shifts back to the plaintiff to refute the defendant's evidence by her own affidavits or other sworn proof. *Instrumentacion Ltda. v. Phillips Elec. North Am. Corp.*, 951 So. 2d 1001, 1002 (Fla. 2d DCA 2007) (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989)). Thus, the Court specifically directed Stainrod to file a verified complaint setting forth her jurisdictional allegations, which she did not do. *See, e.g.*, *Williams v. United States*, 314 F. App'x 253, 256 (11th Cir. 2009) (treating a *pro se* plaintiff's verified complaint under 28 U.S.C. § 1746 as equivalent to an affidavit).

In response, Stainrod filed a first amended complaint (ECF Doc. 13), to which Scarlet Pearl filed a second motion to dismiss (ECF Doc. 14).[1] As Scarlet Pearl points out in the second motion to dismiss, Stainrod did not cure the deficiencies as directed by the Court.[2] She did not (1) file a verified amended complaint, and (2) she did not identify Granieri's citizenship or make clear that Scarlet Pearl is the only intended defendant. She did, however, amend her complaint to include allegations regarding Scarlet Pearl's relationship with Good Times. ECF Doc. 13.

Scarlet Pearl filed the second motion to dismiss on the same grounds: lack of subject matter jurisdiction (*i.e.*, failure to establish diversity) and lack of personal jurisdiction over Scarlet Pearl. ECF Doc. 14. Prior to the Court's ruling on the second motion to dismiss, Stainrod filed a "second successive amended complaint." ECF Doc. 18. Stainrod did not seek leave to file the second amended complaint. *See* Federal Rule of Civil Procedure 15(a)(1); (2) (requiring consent or leave of the court to file a second amended complaint). Upon review, the substance of the allegations in the second and first amended complaint is not substantively different. The only changes appear to be formatting changes. Thus, the Court will accept the second amended complaint as the operative pleading and, for judicial efficiency, will consider the arguments made by Scarlet Pearl in the second motion to dismiss as

---

[1] The second motion to dismiss MOOTS the first motion to dismiss. ECF Doc. 12.
[2] Scarlet Pearl also seeks dismissal on the ground that Stainrod failed to comply with the Court's prior order. The undersigned does not recommend dismissal on that basis.

Case No. 3:20cv5456-MCR-HTC

being addressed to the second amended complaint. After filing a second amended complaint, Stainrod also filed a response to the second motion to dismiss. ECF Doc. 19.

## II. SUBJECT MATTER JURISDICTION

Federal courts are courts of limited jurisdiction. *See PTA–FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016). A district court can hear a case only if it has "at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Id*. (quotation omitted). Stainrod seeks to invoke the Court's diversity jurisdiction, and it is clear that neither of the other types applies.

Stainrod continues to identify Granieri as a defendant in the case style of her second amended complaint. Also, as with her prior complaints, she continues to allege no facts as to Granieri. Other than in the case style, Granieri is not named in the body of the complaint, and Stainrod appears to use "Defendant" and "Defendants" interchangeably. She also has not sought to serve Granieri with any of the complaints.

The second amended complaint contains the following jurisdictional allegations: (1) "Plaintiff and the Defendants are domicile of different states"; "The Plaintiff is from the State of Florida and the defendant is from the States [sic] of

Mississippi."; and (3) Scarlet Pearl's principal place of business is in Mississippi.[3] ECF Doc. 18 at 1–2. Scarlet Pearl argues these allegations are insufficient to establish diversity because Stainrod has not specifically set forth Granieri's citizenship.[4]

The undersigned does not find this failure to be dispositive. First, the undersigned recognizes that Stainrod is *pro se*, and this Court must therefore review her allegations liberally. Second, Stainrod has not alleged a single fact about Granieri in her second amended complaint. Thus, Granieri is a dispensable party, and this Court may dismiss a dispensable party *sua sponte* to preserve jurisdiction. *See Luxor Agentes Autonomos de Investimientos, Ltda. v. Intertransfers, Inc.*, 638 F. App'x 925, 927 (11th Cir. 2016); Fed. R. Civ. P. 21. Moreover, Stainrod has not tried to serve Granieri, and the Court "must" dismiss a party who has not been served under Rule 4(m), absent good cause. Fed. R. Civ. P. 4(m); *USHA (India), Ltd. v.*

---

[3] The undersigned notes that Scarlet Pearl is a d/b/a for a limited liability company, Land Holdings I, LLC. For jurisdictional purposes, diversity is determined based on the citizenship of each member of the LLC. *Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017). Stainrod, however, has not alleged the citizenship of any member of the LLC, and the Court presumes she is not privy to such information or even the identity of the members. The undersigned also notes, however, that Scarlet Pearl does not allege that it is not a citizen of Florida or that the citizenship of any member of the LLC destroys diversity. Regardless, because the undersigned finds no personal jurisdiction exists, the Court need not address this issue or allow the parties to address this issue.

[4] Stainrod does not make any additional argument regarding subject matter jurisdiction in her response to the motion to dismiss. ECF Doc. 19. Instead, under the heading "subject matter jurisdiction," Stainrod simply mentions the relationship between Good Times and Scarlet Pearl. *Id.* at 8.

*Honeywell Int'l, Inc.*, 421 F.3d 129, 134 (2d Cir. 2005) (dismissing nondiverse defendant to preserve jurisdiction because district court should have done so under Rule 4(m)).

The undersigned, however, finds that it need not consider whether Granieri should be dismissed to preserve jurisdiction because, as discussed below, regardless of whether there is subject matter jurisdiction, the Court has no personal jurisdiction over Scarlet Pearl.[5]

## III. PERSONAL JURISDICTION

Courts in the Eleventh Circuit follow a two-step analysis when deciding whether personal jurisdiction exists over a nonresident defendant. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, the court must determine whether the state's long-arm statute (in this case Florida) provides a basis for personal jurisdiction over the defendant. *Id.* Second, if the state's long-arm statute provides a basis for personal jurisdiction, the court must then determine whether "minimum contacts" exist to satisfy the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not offend

---

[5] *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (recognizing that "there is no unyielding jurisdictional hierarchy. Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry").

Case No. 3:20cv5456-MCR-HTC

traditional notions of fair play and substantial justice" as set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). *Id.* (citations omitted).

The minimum contacts requirement is satisfied if the defendant "purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state." *Achievers Unlimited, Inc. v. Nutri Herb, Inc.*, 710 So. 2d 716, 719 (Fla. 4th DCA 1998); *see also Burger King v. Rudzewicz*, 471 U.S. 462 (1985); *Hanson v. Denckla*, 357 U.S. 235 (1958). Only if the court determines there is a basis for personal jurisdiction under the state long-arm statute does it conduct the due process analysis. *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000).

### A. Specific Jurisdiction

Florida's long-arm statute provides for two distinct categories of personal jurisdiction: specific jurisdiction conferred under § 48.193(1) and general jurisdiction conferred under § 48.193(2). *Miller v. Berman*, 289 F. Supp. 2d 1327, 1331 (M.D. Fla. 2003) (citing *Northwestern Aircraft Capital Corp. v. Stewart*, 842 So. 2d 190, 193 (Fla. 5th DCA 2003)). Under § 48.193(1)(a), a court has specific jurisdiction "for any cause of action arising from … operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." *See* Fla. Stat. § 48.193(1)(a). That provision, thus, has two

requirements: first, that the defendant carried on a business in Florida, and second, that the cause of action arose from that business.

For a court to find that a defendant is carrying on a business or business venture in Florida either itself or through an agent, the court must find that the defendant's activities "considered collectively . . . show a general course of business activity in the state for pecuniary benefit." *Sculptchair*, 94 F.3d at 627 (citing *Dinsmore v. Martin Blumenthal Assocs. Inc.*, 314 So. 2d 561, 564 (Fla.1975)). Factors relevant to, but not dispositive of, this analysis include the presence and operation of an office in Florida; the possession and maintenance of a license to do business in Florida; a substantial number of Florida clients served; and a large percentage of overall revenue gleaned from Florida clients. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (citations omitted).

The undersigned finds the evidence presented to be insufficient to show Scarlet Pearl conducts business in Florida. First, Scarlet Pearl submitted the declaration of Julia Jones, a risk manager employed by Scarlet Pearl (ECF Doc. 7-1), stating Scarlet Pearl has no "offices, bank accounts, property, or a registered agent in Florida," is not licensed to do business in Florida, "does not hold any gaming permit or license in Florida," and has no employees in Florida. ECF Doc. 7-1.

Second, although Stainrod takes issue with Jones' declaration, she has presented no evidence to the contrary.[6]

Instead, Stainrod relies on unsworn allegations regarding a business relationship between Scarlet Pearl and Good Times. In her unverified second amended complaint and response, Stainrod alleges Scarlet Pearl pays Good Times to transport people to the casino from Florida. ECF Doc. 18 at 3; ECF Doc. 19 at 3. Stainrod, however, has produced no evidence regarding the existence of this relationship—no contracts, no marketing materials, no affidavits.[7] Under Florida law, the plaintiff bears the burden of proving personal jurisdiction, such that "[w]hen a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Sculptchair, Inc.,* 94 F.3d at 627; *Catalyst Pharm., Inc. v. Fullerton*, 748 F. App'x 944, 946 (11th Cir. 2018) (noting that "[v]ague and conclusory allegations do not satisfy" a plaintiff's burden to "make out a prima facie case of jurisdiction").

---

[6] Taking her disagreement with Jones' declaration one step further, Stainrod has filed a motion for investigation (ECF Doc. 17), wherein she alleges that Jones perjured herself by stating that Scarlet Pearl does not conduct business in Florida given its relationship with Good Times. This motion is DENIED. Notably, Stainrod's request for the Court to initiate a criminal investigation is not relief this Court can grant.

[7] Stainrod states in her motion for investigation that she intends to subpoena Ms. Terri Smith, chief operating office of Good Times to corroborate the relationship with Scarlet Pearl. ECF Doc. 17 at 2.

Case No. 3:20cv5456-MCR-HTC

Regardless, even accepting as true that Scarlet Pearl pays Good Times to transport Florida citizens, such as Stainrod, to its Mississippi casino, this conduct does not establish specific jurisdiction. Notably, even if Scarlet Pearl's alleged business relationship with Good Times were sufficient to constitute carrying on business in Florida, there is no specific jurisdiction because Stainrod's cause of action against Scarlet Pearl does not "arise from" that activity.

To satisfy the second element for specific jurisdiction, Plaintiff must show some "direct affiliation, nexus, or substantial connection between the cause of action and the [defendant's] activities within the state." *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001) (quoting *Citicorp Ins. Brokers (Marine) Ltd. v. J.R. Charman*, 635 So. 2d 79, 81 (Fla. 1st DCA 1994)) (internal quotation marks omitted). Stainrod does not make that showing here because her cause of action, the slip and fall, arises from Scarlet Pearl's alleged failure to post any "caution signs or caution tapes in the wet area" on the floors at the casino, and not its relationship with Good Times.

In *Potts v. Harrah's Atlantic City Hotel & Casino*, for example, the court addressed whether Pennsylvania's long arm statute was sufficient to confer either specific or general jurisdiction over the defendant casino, which had its principal place of business in Delaware, and determined that neither types of jurisdiction existed. *Potts v. Harrah's Atl. City Hotel & Casino*, 2007 WL 1866750, at *1 (E.D.

Pa. June 28, 2007). The court in *Potts* found a lack of specific jurisdiction because the wrongful conduct complained of—a faulty stool, which caused plaintiff to fall—did not arise out of the casino's contacts with the forum state. *Id.*

In other words, regardless of whether Scarlet Pearl solicited customers in Florida through Good Times or used Good Times to transport Florida citizens to the casino, that conduct is not what caused Plaintiff's injury. *See, e.g., Pearrow v. National Life & Accident Ins. Co.*, 703 F.2d 1067 (8th Cir. 1983) (holding that Arkansas resident's cause of action for negligence relating to her slip and fall at defendant's facility in Tennessee did not arise out of the solicitation of business by defendant in Arkansas); *Chedid v. Boardwalk Regency Corp.*, 756 F. Supp. 941 (E.D. Va. 1991) (holding that slip and fall on wet elevator floor in New Jersey casino did not arise from casino owner's advertising and solicitation in Virginia).

B.    **General Jurisdiction**

Florida Statutes section 48.193(2) provides that a Florida court may exercise personal jurisdiction over a nonresident who engages in "substantial and not isolated activity within [Florida], whether such activity is wholly interstate, intrastate, or otherwise . . . ." Fla. Stat. § 48.193(2). Jurisdiction under this section does not require a showing of connectivity between a non-resident defendant's activities and plaintiff's cause of action. *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620

(Fla. 4th DCA 1999) (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

Florida courts have interpreted "substantial and not isolated activity" to mean "continuous and systematic general business contact." *Autonation, Inc. v. Whitlock*, 276 F. Supp. 2d 1258, 1262 (S.D. Fla. 2003) (citing *Woods*, 739 So. 2d at 620). In considering a defendant's contacts, courts must look at the defendant's activities collectively over a relevant period of years leading up to the lawsuit. *Autonation*, 276 F. Supp. 2d at 1263. For jurisdiction to attach, these contacts must show a "general course of business activity in the State for pecuniary benefit." *Stubbs*, 447 F.3d at 1361 (citations omitted) (internal quotation marks omitted). The level of business contacts required to establish general jurisdiction is generally greater than the level of contacts required to establish specific jurisdiction. *See Kozial v. Bombardier-Rotax GmbH,* 129 Fed. App'x. 543, 546 (11th Cir. 2005), *cert. denied*, 547 U.S. 1018 (2006); *accord Consolidated Dev. Corp.*, 216 F.3d at 1292 (citations omitted).

To support the court's exercise of general jurisdiction, a defendant's business contacts with the forum "must be especially pervasive and substantial . . . ." *General Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1343 (S.D. Fla. 2002), *aff'd* 54 Fed. Appx. 492 (11th Cir. 2002). The contacts "must be so extensive to be tantamount to [a defendant] being constructively present in the state to such a degree

that it would be fundamentally fair to require it to answer in [the forum state's courts] in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Baker v. Carnival Corp.*, 2006 WL 3360418, at *2 (S.D. Fla. Nov. 20, 2006) (slip copy) (quoting *Purdue Research Foundation v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003)) (internal quotation marks omitted).

Scarlet Pearl's alleged contacts with Florida are minimal at best. Scarlet Pearl is a limited liability company organized under Delaware laws with its principal place of business in D'Iberville, Mississippi. Scarlet Pearl is not licensed or registered to do business in Florida, and it has no offices, bank accounts, property, registered agents, or employees stationed in Florida. Scarlet Pearl also does not have a gaming permit or license in Florida. ECF Doc. 7-1 at 12–13. Stainrod does not refute any of these assertions.

Instead, as discussed above, Stainrod offers two bases for personal jurisdiction: first, that Scarlet Pearl pays Good Times to transport Florida citizens and second, that Scarlet Pearl solicits Florida citizens to its casino. *See* ECF Doc. 19 at 3–4. Neither of these facts, considered together or separately, are sufficient to satisfy general jurisdiction requirements. *See Davis v. PNGI Charles Town Gaming, LLC*, 2007 WL 4553695, at *4 (E.D. Pa. Dec. 26, 2007) (quoting *Potts*, 2007 WL 1866750, at *11) ("Defendant's connections with Pennsylvania motor coach carriers do not constitute continuous and substantial contacts with Pennsylvania. 'The fact

that the Defendant arranges transportation for Pennsylvania citizens to Defendant is an insufficient contact to support a finding of continuous and substantial contacts that give rise to general jurisdiction.'").

The *Potts* case is once again helpful to illustrate this point. As stated above, the court in *Potts* addressed both specific and general jurisdiction. Like Scarlet Pearl, the defendant casino in *Potts* did not do business in the forum state, did not own or operate in property in forum state, is not incorporated in the forum state, and is not licensed to do business in the forum state. *Potts*, 2007 WL 1866750, at *3. Nonetheless, like Stainrod, the plaintiff in *Potts* argued the district court in Pennsylvania had general jurisdiction because the defendant advertised in Pennsylvania and had arrangements with bus companies to transport Pennsylvania citizens to its casino in New Jersey. *Id.*

The *Potts* court, however, disagreed with the plaintiff and found the solicitation of customers in Pennsylvania and the arrangement of transportation of Pennsylvania citizens to the casino were "insufficient contact[s] to support a finding of continuous and substantial contacts that give rise to general jurisdiction." *Id.* at 4. Similarly, in *Capizzano v. Walt Disney World Co.*, 826 F. Supp. 53 (D.R.I. 1993), the district court found the following contacts insufficient to establish jurisdiction over the defendant theme park: (1) defendant pays 10% commissions to local travel agents for booking local residents at Disney World hotels in Florida, (2) Disney

World advertises in the Rhode Island market both through print and local television stations, and (3) admission tickets for the theme parks can be purchased locally in Rhode Island. *Capizzano*, 826 F. Supp. at 55.

Simply, even if the Court were to accept Stainrod's unverified allegation that Scarlet Pearl had a contract with Good Times to transport Florida citizens to the Mississippi casino as evidence of jurisdiction, such conduct is insufficient to establish this Court has general jurisdiction over Scarlet Pearl. *See Tillery v. Maritime Group*, 1996 U.S. Dist. LEXIS 3630 (S.D. Ala. Jan. 29, 1996) (finding that direct and indirect marketing activities in Alabama in order to solicit individuals and groups to the Palace Casino and operation of the "Bus on Us" program, which provides transportation for Alabama citizens to and from the Palace Casino, were insufficient contacts to establish general jurisdiction); *Feldman v. Bally's Park Place, Inc.*, 2006 WL 1582331, at *4 (E.D. Pa. June 5, 2006) ("The evidence on the record that Defendant Bally's also facilitated the transportation of Philadelphia citizens to its casinos by having one of its managers visit particular bus companies and pledge to have passengers greeted with vouchers once they arrived at Claridge Tower in New Jersey does not then make the exercise of personal jurisdiction reasonable.").

## IV.   CONCLUSION

For the forgoing reasons, the undersigned concludes Stainrod has failed to meet her burden of establishing this Court's jurisdiction over Scarlet Pearl under Florida's long-arm statute.  Because the court has determined there is no basis for personal jurisdiction over Scarlet Pearl under Florida's long-arm statute, it need not consider whether its exercise of personal jurisdiction would offend due process.  *See Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000).

Additionally, although the undersigned recognizes the Court may also transfer the action to the Southern District of Mississippi rather than dismiss it, the undersigned does not recommend such a transfer here.  Namely, as set forth above, it remains unclear whether Granieri is a defendant in this action, and there are no allegations as to his citizenship.  Thus, the undersigned finds that for purposes of judicial efficiency, Stainrod should refile this action in the Southern District of Mississippi with a clearer complaint if she chooses to do so.

Accordingly, it is ORDERED:

1.   Stainrod's Motion Requesting the Investigation of Perjury (ECF Doc. 17) is DENIED.

Additionally, it is RECOMMENDED:

1.  Scarlet Pearl Casino Resort's Motion to Dismiss Plaintiff's Amended Complaint (ECF Doc. 14) be GRANTED. Scarlet Pearl's Motion to Dismiss (ECF Doc. 7) is MOOT.

2.  The clerk be directed to close this case.

At Pensacola, Florida, this 7th day of December 2020.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.** **An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**